

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable C. D. Simmons
Comptroller
The University of Texas
Austin, Texas

Dear Sir:

Opinion No. O-6239
Re: Authority of the Board of Regents
of the University of Texas to en-
ter into a contract whereby the
University will be furnished data
and information concerning students
and ex-students.

Your opinion request of October 25, 1944, reads as
follows:

"The Board of Regents of The University of
Texas has instructed me to request your opinion
as to whether said Board has the legal right to
enter into the contract contemplated by the fol-
lowing proposed resolution and to make the con-
templated payments out of any unappropriated bal-
ance of funds available to the Board for this pur-
pose, particularly the so-called local funds of the
University.

"WHEREAS, It is essential and necessary
for the efficient and orderly conduct of the
business of The University of Texas and the
proper development of the services rendered
by the University to the State of Texas that
full and complete information and data be
furnished and made available to it concerning

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

the addresses, vocations and accomplish-
ments of its students and ex-students; and

"WHEREAS, The Ex-Students' Association
of the University of Texas has for the past
twenty-five years kept and maintained cur-
rent and permanent records reflecting such
information and data at its own expense; and

"WHEREAS, These records are the most
practical, logical and reliable source from
which this information and data can be ob-
tained; and

"WHEREAS, The cost and expense to the
Association in maintaining such records and
furnishing these data has increased to such
an extent that unless it can receive just
compensation commensurate with the services
rendered in furnishing such data the service
must be discontinued; and

"WHEREAS, The University is willing to pay
the Association for its services in furnish-
ing and making available to it such informa-
tion; and

"WHEREAS, The Association is willing to
carry on this work and service to the Univer-
sity for a consideration of $5,000 annual pay-
ment to it;

"NOW, THEREFORE, BE IT RESOLVED, By the
Board of Regents of The University of Texas
that the accounting officers of the University
be, and they are hereby, authorized and dir-
ected to pay to the proper officers of the
Ex-Students' Association of The University
of Texas the total sum of $5,000 annually for
its services in furnishing to the proper of-
ficers of the University data and information
concerning the addresses, vocations and ac-
complishments of its students and ex-students
as and when such services are performed. Such

Hon. C. D. Simmons, Page 3

annual payments are to cover the present
fiscal year beginning September 1, 1944, and
ending August 31, 1945, and remittances are
to be made upon a monthly basis. There is
hereby appropriated out of any unappropriated
balance remaining in the General Fund for this
purpose the sum of $5,000.

"The Ex-Students' Association is a private corpor-
ation duly incorporated under and by virtue of the laws
of the State of Texas for charitable and educational
purposes. Therefore, it is a separate and distinct en-
tity from the University itself. This corporation is
without capital stock and was not formed, nor is it
operated, for the purpose of profit either to itself
or to its members. The Regents are members of this
Association, but hold no office therein.

"The Association has kept and maintained, for
the past twenty-five years, current and permanent
records reflecting and showing information and data
concerning students and ex-students of The Univer-
sity of Texas, particularly their past and present
addresses, vocations, and accomplishments. These
records constitute the most complete, practical, and
reliable source for this information. It is neces-
sary from time to time for The University of Texas
to have and obtain such information. In the past
it has been possible for the Association to keep
and furnish this information to the University with-
out charge, but in the last few years the costs and
expenses of both keeping and furnishing this informa-
tion free of cost has become impossible. Therefore,
in order to keep this information and to furnish the
same to the University, it is necessary that a charge
be made therefor by the Association.

"The alternative to the University of setting
up and maintaining independently of the Association
files a duplicate set of records from which to ob-
tain this needed information would require an outlay
many-fold greater than the charge proposed by the
Association for said information.

"For your further information in connection
with the consideration of this question, there is
enclosed herewith the original of a letter addressed
to you this date by Ex-Students' Association."

Hon. C. D. Simmons, Page 4

        The letter from the Ex-Students' Association lists the following services which were performed for the University during the past year in order to illustrate the type of services which it will perform under the proposed arrangement:

        "1.  Prepared and furnished to the Development Board and the President's office a mailing list of 25,000 ex-students. This list was used in a first-class mailing and our addresses proved to be better than 93% correct.

        "2.  Prepared and furnished the Medical School a complete list of all medical exes in military service. Also worked with Medical School officials in bringing the Medical files up to date.

        "3.  Prepared and furnished lists of exes in military service to the Law School and checked with them continuously during the year in keeping addresses up to date. Preparing these military lists entailed weeks of research and letter writing.

        "4.  Worked with the Schools of Business, Journalism, and Pharmacy in preparing mailing lists of ex-students for circular letters from the departments.

        "5.  Furnished University officials with list of ex-students in various communities and sections in and out of Texas.

        "6.  Worked with the Auditor's Office in locating many former students owing money to loan funds. This work involved countless hours of research, and we are happy to know that it resulted in the collection of many old notes which had been outlawed.

        "7.  Furnished information regarding thousands of ex-students to the Daily Texan, the Austin papers and other papers over the state. This work alone occupied nearly half the time of a full-time person.

        "8.  Our record department has served as a laboratory for the School of Journalism. From one to ten students work at the files almost daily.

Hon. C. D. Simmons, Page 5

"9. Furnished mailing lists to E. S. M. W. T.
(Engineering, Science, Management, War Training) in
building their vocational classes over the state.

"10. Assisted the F. B. I. and the investi-
gators of the Army and Navy in securing information
regarding ex-students of the University."

The general powers of the Board of Regents are set
forth in Article 2585, Vernon's Annotated Civil Statutes, as
follows:

"They shall establish the departments of
a first-class university, determine the offices
and professorships, appoint a president, who shall,
if they think it advisable, also discharge the duties
of a professor, appoint the professors and other of-
ficers, fix their respective salaries; and they shall
enact such by-laws, rules and regulations as may be
necessary for the successful management and government
of the University; they shall have power to regulate
the course of instruction and prescribe by and with
the advice of the professors, the books and author-
ities used in the several departments, and to confer
such degrees and to grant such diplomas as are usual-
ly conferred and granted by universities."

In the absence of clear evidence of an abuse of the
powers granted by this Article, both the courts and this depart-
ment have been extremely reluctant to question or to disturb the
judgment of the Board on matters relating to the internal admin-
istration of the University. Thus in the case of Foley v. Benedict,
55 S. W. (2d) 805, our Commission of Appeals declared:

"The Legislature of this state having lodged
the power with the Board of Regents to enact rules
and regulations as may be necessary for the success-
ful management and government of the University, they
shall have power to adopt such rules and to regulate
the course of instruction, and prescribe, by and with
the advise of the faculty, the books and authorities
used in the several departments. That authority rests
with the Board of Regents and the faculty as provided
for by statute; and, if a change or modification is
desired in the rules and regulations, it is a matter

for the consideration of the Legislature. The courts will not interfere therewith in the absence of a clear showing that they have acted arbitrarily or have abused the authority vested in them. The great weight of authority sustains this doctrine . . ."

Reasoning along similar lines, this department has previously ruled in Opinion No. O-4167, a copy of which Opinion is in your files, that under the general powers conferred by Article 2585, the Board possessed the power to establish a Public Relations Department and a Development Board and to expend University funds for such agencies, even though there is no specific statutory authority for such action and expenditures. Stressed in this Opinion was the thought that the relations of the University with the public and the development of the University are matters pertaining to the establishment of a first class university, and that the creation of agencies to facilitate these matters was within the scope of the powers conferred upon the Board by Article 2585.

In the instant situation, the Board in effect desires to purchase certain information relating to students and ex-students from an organization which has proved itself eminently qualified to furnish such information and which cannot continue to furnish it free of charge. It is common knowledge that the maintenance of a loyal and interested body of alumni is highly desirable, and perhaps indispensable, in the operation of a first class school of collegiate rank. It is also common knowledge that the requisite loyalty and interest may be fostered by keeping the alumni fully informed as to the problems and progress of the school and by showing the individual alumnus that the school maintains a continuing interest in his progress and that it stands ready to assist him in matters connected with his attendance at the school. In our opinion, the engendering of cordial and mutually helpful relations between the Univerity of Texas and its graduates is a function closely akin to the continued growth of the Univerity and to the maintenance of its status as a first class institution, and the Board of Regents possesses a wide discretion with respect to the manner in which this function is to be accomplished. The information which the Board desires to purchase is reasonably related to the accomplishment of this function, and, in addition, such information appears to be of value in the instruction of students in the School of Journalism and in the collection of debts owed to the University or to its various trust funds. In our opinion, the

Hon. C. D. Simmons, Page 7

Board is authorized to acquire such information, and, under the facts which you have submitted, the decision of the Board to acquire this information by purchase rather than by the establishment of its own system of records is a decision which is well within the scope of the Board's discretion under Article 2535 and the case of Foley v. Benedict, supra.

Consequently, you are respectfully advised that the Board of Regents has the power to enter into the contract contemplated by the resolution set forth above and that the contemplated payments may be made out of any unappropriated balance of funds available to the Board for this purpose. In reaching this conclusion, we have disregarded as immaterial the fact that the individual members of the Board are also members of the Ex-Students' Association.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By R. Dean Moorhead
R. Dean Moorhead
Assistant

RDM:fo

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN